**KLEINBARD LLC**
Matthew H. Haverstick (PA ID No. 85072)
Paul G. Gagne (PA ID No.42009)
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA 19103                     *Attorneys for Plaintiff*
(215) 568-2000                             *Conductive Technologies, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONDUCTIVE TECHNOLOGIES, INC., | Civil Action |
| *Plaintiff,* | No. 1:22-cv-01750-CCC |
| v. | (U.S.D.J. Christopher C. Conner) |
| PNC BANK, NATIONAL ASSOCIATION, | |
| *Defendant.* | |

### AMENDED COMPLAINT

Plaintiff, Conductive Technologies, Inc. ("CTI"), by and through its undersigned counsel, hereby brings this civil action against Defendant PNC Bank, National Association ("PNC"), and in support hereof, avers as follows:

{02270769;v1 }

## I.     INTRODUCTION

This lawsuit arises from the failure of a bank to comply with contractual obligations to a depositor.  That depositor, CTI, has lost substantial sums as the result of fraudulent wire transfers from an account held by PNC for CTI.  PNC permitted to those transfers to occur without authorization despite its contractual duties to keep CTI's account secure.  PNC has failed to agree to reimburse CTI for the losses suffered by CTI as a result of the fraudulent transfers.

## II.    PARTIES

1.    Plaintiff CTI is a Pennsylvania corporation with its principal place of business at 935 Borom Road, York, Pennsylvania 17404.

2.    Defendant PNC is a banking institution with its principal place of business at One PNC Plaza, 249 Fifth Ave., Pittsburgh, Pennsylvania.

## III.   JURISDICTION AND VENUE

3.    Venue exists in this court pursuant to Pennsylvania Rules of Civil Procedure 1006 and 2179 because a transaction or occurrence took place in this county out of which the cause of action asserted in this complaint arose and because Defendant PNC regularly conducts business in this county.

4.    The Court has personal jurisdiction over PNC in that it regularly conducts business is in this county.

## IV.     FACTUAL BACKGROUND

5.      CTI is a contract manufacturer to the medical device and industrial markets.

6.      CTI maintains a bank account with PNC, Account No. 5004321015 (the "CTI Account").

7.      The depository relationship between CTI and PNC is governed by a written agreement that sets forth the "terms and conditions under which PNC Bank will provide certain" services to its account holders, including the wire transfer services at issue in this Amended Complaint. Treasury Management Services Comprehensive Agreement signed by the parties on or about October 3, 2008, page 1, Section 1 (the "2008 TMSCA").  The 2008 TMSCA is incorporated in and made a part of this Amended Complaint. A copy of the 2008 TMSCA is attached hereto as Exhibit A.

8.      Section 4 of the 2008 TMSCA provides: "If required for a Service, you must select a security procedure ('Security Procedure') from the options we offer and name one or more authorized representatives (each an 'Authorized Representative') to initiate transactions and act for you with respect to the Services." 2008 TMCSA, page 2, Section 4.

9.      The security procedure chosen by CTI is designated in a Master Resolution and Authorization for Depository Accounts and Treasury Management

Services ("Master Resolution"), dated October 3, 2008. A copy of the Master Resolution is attached hereto as Exhibit B. The Master Resolution is incorporated in and made a part of this Amended Complaint. Section B of the Master Resolution, entitled "Authorization to Sign Checks and Other Instruments and Withdrawal Orders and to Designate Other Persons Who Have Such Authority," expressly provides in a handwritten amendment that the approval of two individuals designated by CTI is required for withdrawal orders in amounts over $25,000. Master Resolution, page 1, Section B.

10.  Section 4 of the 2008 TMSCA provides that PNC will use reasonable efforts to notify CTI of any breach of security or unauthorized orders.

11.  In 2009, PNC required CTI as a user of "PINNACLE" services to provide "tokens" to authorized users in order to initiate transactions.

12.  The July 2021 version of the TMSCA provides: "If required for a Service, you must select a security procedure ('Security Procedure') from the options we offer and name one or more authorized representatives (each an 'Authorized Representative') to initiate transactions and act for you with respect to the Services. Security Procedures may include security codes, personal identification numbers ('PINs') tokens, check stock, or other security devices." 2021 TMSCA, page 7, "Security Procedures." A copy of the 2021 TMSCA is attached hereto as Exhibit C. is incorporated in and made a part of this Amended Complaint.

13. The 2021 TMSCA also provides that "[w]e will only execute payment orders if the individual(s) issuing the orders provide the authentication protocols (including password(s), PIN(s), token(s) or other security code(s)" (2021 TMSCA, page 69, "Issuing and Executing Payment Orders").

14. CTI did not at any time change its selected Security Procedure, namely secondary (two-person) authorization.

15. The 2021 TMSCA expressly provides for the use of "secondary authorization" and provides:

> Secondary Authorization applies to certain Payment Orders issued via PINACLE. When applicable, it requires a second Authorized Person to verify and approve a Payment Order by PINACLE prior to its acceptance by us. Payment orders awaiting secondary (or tertiary) authorization, including without limitation future-dated payment orders, which have not been properly authorized by the cut-off time on the date the payment order is issued, may be canceled without further notice to you.

2021 TMSCA, page 70, "Secondary Authorization."

16. The 2021 TMSCA provides for notification by PNC to CTI of certain account events, consistent with Section 4 of the 2008 TMSCA. 2021 TMSCA, page 17, "Event Notification."

17. In order to fulfill its contractual obligations to CTI, PNC should have had in place processes or policies that would have alerted it to the suspicious nature

of the excessive number of attempted transfers from the CTI Account far in excess of CTI's customary banking practice.

18.   On June 2, 2022, one of CTI's individuals designated pursuant to the Master Resolution encountered difficulties logging into the CTI Account. As a result of several communications between CTI and PNC, CTI subsequently discovered that a number of fraudulent wire transfers (the "Fraudulent Transfers") had resulted in a large amount of funds being withdrawn from the CTI Account. These transfers were not initiated, requested, or authorized by CTI.

19.   CTI received no consideration for the Fraudulent Transfers.

20.   Fourteen (14) Fraudulent Transfers were completed on June 2, resulting in a total of $3,504,105.77 being withdrawn from the CTI Account. An additional sixteen (16) Fraudulent Transfers were attempted on June 2 in the amount of $3,559,009.79, but as the CTI Account had been drained of funds these attempts were unsuccessful.

21.   In addition to the sums lost as a result of the Fraudulent Transfers, CTI incurred expenses because CTI was forced to retain an IT consultant to investigate and remediate the causes of the Fraudulent Transfers.

22.   It was possible for the Fraudulent Transfers to be carried out because PNC failed to employ and/or execute secondary authorization as required by the Master Resolution and 2021 TMSCA.

23. PNC also failed to have in place processes or policies that would have alerted it to the suspicious nature of the excessive number of attempted transfers from the CTI Account far in excess of CTI's customary banking practice.

24. PNC also failed to use reasonable efforts to alert CTI to the unusually large number of attempted transfers from the CTI Account on June 2 as required by the 2008 TMSCA and 2021 TMSCA.

25. Subsequent to June 28, PNC has recovered certain sums that were fraudulently transferred from the CTI Account on June 2, resulting in a loss of $1,242,525.49. PNC has advised CTI that it does not expect that sum to be recovered.

26. Subsequent to the filing of the original Complaint in this action, CTI has recovered insurance payments relating to the Fraudulent Transfers in the sum of $855,115. Accordingly, CTI's loss on the fraudulent transfers is $387,410.49 as of the date of filing of this Amended Complaint.

27. PNC's contractual obligation with CTI requires it to protect CTI from fraudulent transfers from the Account.

28. PNC has failed and refused to reimburse CTI for the remaining loss associated with the Fraudulent Transfers.

29. Despite CTI's multiple requests to PNC for reimbursement of the losses associated with the Fraudulent Transfers, PNC has failed to agree to reimburse CTI for those losses.

## COUNT I – BREACH OF CONTRACT

30. CTI incorporates the averments of Paragraph 1 through 27 of this Complaint as though set forth fully.

31. As a result of the relationship between CTI and PNC, PNC has a contractual obligation to CTI to protect the funds in the CTI Account from unauthorized wire transfers by, among other things, requiring secondary authentication of any attempted transfers.

32. PNC also has a contractual obligation to CTI to have in place practices or policies that would have alerted PNC to the suspicious nature of the excessive numbers of attempted transfers from the CTI Account on June 2 far in excess of CTI's customary banking practices.

33. PNC also has a contractual obligation to CTI to alert CTI of the excessive attempted transfers from the CTI Account on June 2.

34. PNC breached its contracts with CTI by failing to employ and/or execute secondary authorization as required by Section 4 of the 2008 TMCSA, Section B of the Master Resolution and the Sections of the 2021 TMSCA entitled "Security Procedures," "Issuing and Executing Payment Orders," and "Secondary Authorization."

35. PNC also breached its contracts with CTI by failing to use reasonable efforts to alert CTI to the unusually large number of attempted transfers from the

CTI Account on June 2 as required by Section 4 of the 2008 TMSCA and the Section of the 2021 TMSCA entitled "Notifications.".

36. PNC also breached its contracts with CTI by failing to have in place processes or policies that would have alerted it to the suspicious nature of the excessive number of attempted transfers from the CTI Account far in excess of CTI's customary banking practice.

37. PNC failed to protect CTI's PNC account from unauthorized wire transfers by, among other things, (i) failing to require two-person authentication with respect to the Fraudulent Transfers; (ii) failing to have in place processes or policies that would have alerted it to the suspicious nature of the excessive number of attempted transfers from the CTI Account on June 2; and (iii) failing to alert CTI to the unusually large number of attempted transfers from the CTI Account on June 2.

38. As a result of PNC's breach of contract, CTI has suffered damages in excess of $75,000.00.

WHEREFORE, Plaintiff CTI requests that the Court enter judgment in its favor and against Defendant PNC requiring PNC (i) to reimburse CTI for any and all losses incurred as a result of the Fraudulent Transfers; and (ii) pay CTI for all

other damages incurred by CTI as a consequence of PNC's breach of contract, in an amount to be determined at trial in excess of $75,000.00, prejudgment interest, and any other relief this court deems just and proper.

Dated: September 7, 2023

/s/ Matthew H. Haverstick
**KLEINBARD LLC**
Matthew H. Haverstick (PA ID No. 85072)
Paul G. Gagne (PA ID No. 42009)
Three Logan Square, 5th Floor
Philadelphia, PA 19103
(215)568-2000
mhaverstick@kleinbard.com
pgagne@kleinbard.com

*Attorneys for Plaintiff Conductive Technologies Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this day, a true and correct copy of the foregoing Plaintiff, Conductive Technologies, Inc.'s Amended Complaint was served on all counsel of record via electronic service through the Electronic Case Filing System for the Middle District of Pennsylvania.


Dated: September 7, 2023                /s/ Matthew H. Haverstick
                                        Matthew H. Haverstick